Arnold P. Etelson, J.
The Village of Spring Valley passed an ordinance on November 24, 1969 providing that upon the termination of the occupancy of any dwelling unit, an application must be made for a certificate of occupancy prior to the entry by a new occupant. The defendants, owners (see below) of multiple dwellings were summoned to this court for their failure to apply for and obtain a certificate of occupancy prior to placing new tenants in their respective residential apartments. Prior to trial, defendants moved to dismiss the informations claiming, among other things, that the ordinance was unconstitutional, as being unreasonable, arbitrary and capricious, vague and ambiguous and violative of due process of law. This court is asked to rule on that motion and in further support of the motions defendants claim the People have failed to serve them with a 15-day notice of violation prior to the issuance of the summonses which brought them before this court, citing the local village code. The cases of People v. Spits and People v. D.B.L. Associates concerning similar charges are consolidated in this decision.
One of the defendants, Dennis Shy, is also charged with failure to paint the interior of one of his apartments which the *94 People allege is, in the opinion of the housing inspector, unsanitary. The defendant has likewise attacked the constitutionality of this ordinance and argues that it is vague and arbitrary in not setting forth any standards upon which the court may decide whether the apartment is in violation.
The ordinance concerning the application for a certificate of occupancy reads as follows:
“ Appendix A — Zoning, Article V Administrative Provisions: Enforcement, Board of Appeals and Amendments, Division 2, Building Permits and Certificates of Occupancy Generally, Section 513.05:
“ [Termination of occupancy, tenancy; new certificate of occupancy required:] "Upon termination of any occupancy or tenancy of a building, structure or dwelling unit, application shall be made for a new certificate of occupancy, and such new certificate of occupancy shall be obtained prior to the commencement of any new occupancy or tenancy of such building, structure or dwelling unit.
“ (513.05) [S'-ic.] Termination [of certificate of occupancy:] A certificate of occupancy shall be deemed to authorize" and is required for both initial and continued occupancy and use of the building or land to which it applies, and shall continue in effect so long as such building or land is used for use authorized in the certificate of occupancy. If terms of such certificate of occupancy are violated by the holder thereof, the building inspector may by service of notice of violation, terminate such certificate of occupancy, which order of termination is, however, subject to review by the board of appeals by the holder thereof taking an appeal to the board of appeals within thirty (30) days of service of said order of termination.
Defendants maintain that the above ordinance concerned with the certificate of occupancy (hereinafter referred to as O.O.) is unconstitutional because it deprives the defendants of their property without due process of law, is unreasonable and arbitrary, deprives the defendants of their equal protection under the law and is discriminatory. In defendants’ brief there appears to be an assumption that the main purpose of the ordinance is to prevent the occupancy by more than the allowable occupants, or family units, upon the renewal of the apartment unit. The People claim that the ordinance gives the owner the opportunity to notify the housing inspector to inspect the soon to be vacated apartment so that the apartment can be prepared, violation free, for the new tenant. Defendants moreover claim that the ordinance violates subdivision 5 of section 302 and sub *95 division 1 of section 329 of the Multiple Residence Law, subdivision 2 of section 22 of the Municipal Home Rule Law and section 175 of the Village Law, respectively.
This court has for the past few years been the forum for the hearing of alleged housing violations in multiple residence areas. (See People v. Brickel, 67 Misc 2d 848.) Some of the defendants in housing violation cases (who are usually landlords, managing agents or superintendents) are in control of slum areas and others in control of nonslum areas. In the cases where the owners of slum dwellings are summoned, their tenants are quite often recipients of welfare assistance from the Department of Social Services. Where the violation concerns * ‘ conditions which are dangerous, hazardous or detrimental to life or health ” (see section 143-b of the Social Services Law known as the Spiegel Law) the funds for the payment of rent are held back by the Department of Social Services until the violation (s) is (are) corrected. The landlords in these areas complain that they do not possess the necessary funds to make the admittedly necessary repairs, especially where the rent is not being paid. There are provisions for the depositing of rent with the court which can be used for making the necessary repairs (Real Property Actions and Proceedings Law, § 755) but this procedure has not been utilized by the parties in this court. The resulting situation is that the tenants very often remain in substandard housing conditions, the rent is not paid, and the Department of Social Services devotes its attention to finding living facilities for those without living quarters in Rockland County, which is said to have a dire shortage of housing facilities for low and middle income families. Some of the occasional vacant quarters are said to be ridden with violations. The constitutionality of the Spiegel Law has been challenged and upheld in Matter of Farrell v. Drew (19 NY 2d 486).
The People (in particular, the Village Board who passed the C.O. ordinance) are apparently concerned about the leasing of apartments to new tenants within the village at a time when the apartment has a violation, whether or not yet filed with the Housing Department and/or with the court. There is an apparent attempt to nip the problem at the bud; to cause the apartment to remain vacant until it meets the standard that is required for an initial C.O. Although a landlord may of course be summoned to court for a violation in one of his occupied apartments, the ordinance seeks to place on the landlord the onus of making available to the new tenant an apartment *96 that satisfies the local regulations. The burden is shifted to the landlord in advance of the new occupancy.
Section 510 “ Enforcement ” provides in part:
(510.01) Building and zoning inspector: This ordinance shall be enforced by a building inspector and one (1) or more assistant building inspectors as deemed necessary (referred to herein individually and collectively as the ‘ 1 building inspector ”) appointed by the village board. It shall be the duty of the building inspector and he is hereby empowered as follows:
(510.011) [Authority to inspect buildings, land, structures:] To inspect any building, structure or land to determine whether any violations of this ordinance have been committed or exist, whether or not such building, structure or land is occupied, and whether or not a certificate of occupancy has been issued;
(510.012) [Authority to issue building permits, certificates of occupancy:] To issue a building permit and certificate of occupancy when compliance is made with the regulations, to refuse to issue the same in the event of noncompliance, and to give written notice of such refusal and the reason therefor to the applicant, which shall be endorsed on the application;
The landlord as the petitioner in a summary proceeding also has the burden to disprove the alleged violation and prove the correction or repair. (Real Property Actions and Proceedings Law, § 755; Social Services Law, § 143-b.) In considering those sections, however, violations are serious ones either causing a constructive eviction or dangerous, hazardous or detrimental to life or health.
The O.O. ordinance under discussion appears to be the first of its kind and of first impression in the courts. The cases dealing with a landowner’s vested rights after obtaining a building permit and thereupon investing funds in the construction of a building are not precedent for the situation at bar. Defendants maintain that the village ordinance is in direct conflict with the overriding State statute, subdivision 5 of section 302 of the Mixltiple Residence Law. Pursuant to the above, when a good faith purchaser or mortgagee relies upon a G.O., “no claim that such dwelling had not, prior to the issuance of such certificate, conformed in all respects to the provisions of this chapter shall be made against such person or his successor in title or ownership with respect to such multiple dwelling or mortgage, or against the interest of any such person with respect thereto ”, The statute refers to prior conformity with the regulations and does not answer the serious question of the permanency and validity of a once-issued O.O,
*97 This court is of the opinion that in the exercise of the police power the local Village Board legislated a valid ordinance designed to foster the “protection and promotion of the public health, safety, convenience, morals and general welfare of the inhabitants of the Village of Spring Valley ” (art. I. Purposes, App. A, § 100). Is it a violation of due process to, as stated above, put the onus upon the landlord to deliver to the tenant a violation-free apartment rather than place the burden on the People to prove the landlord guilty of maintaining that apartment with a violation beyond a reasonable doubt? It is true that the landlord may well be subject to the whim of the building or housing inspector who may refuse to issue a C.O. or be overly demanding or picayune in his requirement for its issuance. But that same inspector may be equally difficult to please at the time of the initial C.O. and the appropriate mandamus procedure is, of course, always available for an abuse of his ministerial duties. The inspector is required to give written notice of his refusal to the applicant for a C.O. (See § 510.012.) Therefore, the apparent shifting of the burden to the would-be-defendant landlord should not be construed as a violation of due process, nor, because of the purpose of the ordinance as already stated, is it unconstitutional because of its alleged unreasonableness, arbitrariness or caprice. Furthermore, the two same-numbered sections are not vague or ambiguous so as to render them unconstitutional. However, the court in this decision need not and does not decide the validity of the provision therein whereby the building inspector may terminate the C.O.
Defendants further challenge the constitutionality of the ordinance on the grounds of unequal protection of the law, contending that landlords are being discriminated against by the enforcement of this ordinance against them only. On this record (the motion papers) there is no factual manifestation of discrimination against and total enforcement against owners of multiple dwellings, but assuming that the ordinance was in practice only enforced against that portion of the residential area, the police power will still have not been exerted unreasonably when measuring it against the avowed purpose of the Village Board.
Defendants further claim that the ordinance is in conflict with subdivision 1 of the section 329 of the Multiple Residence Law, subdivision 2 of section 22 of the Municipal Home Rule Law and subdivision 1 of section 175 of the Village Law. Taking the last first, specific authority is given the village to ‘ ‘ regulate and restrict * # * use of buildings ”. The Multiple Residence *98 Law specifically provides for the legality of more restrictive provisions of a local ordinance. Logically, extending this local authority, the Municipal Home Rule Law allows a State statute to be superseded by a local law where authorized by any other State statute (Multiple Residence Law). These three statutes are therefore not a bar to the local ordinance under discussion.
Also under attack by defendants Shy and Spitz are sections 9-20 and 9-21 of chapter 9 — Housing of the Village of Spring Valley Ordinance which appear as follows:
“ Sec. 9-20. Notice to remedy conditions.
“(a) Issuing authority. The superintendent of housing shall have the right to order in writing by a notice to remedy the remedying of any conditions found to exist in or on any premises, or on such lot upon which said premises are situate, in violation of the provisions of this chapter.
“ (b) Time within conditions must be remedied; service of notice. Such notice to remedy shall provide for a fifteen (15) day period for compliance therewith. It shall be sufficient service of such notice if such notice is personally served upon the owner, agent and/or tenant or is posted in a conspicious place upon the premises affected and a copy thereof mailed to the owner and/or agent of said premises. (Ord. of 2-3-69 A. B.) ”
‘ ‘ Sec. 9-21. Summons for prosecution of violation. Anything in section 9-21 to the contrary notwithstanding, upon the determination of the superintendent of housing that a violation of any of the provisions of this chapter exists with respect to such premises, the said superintendent is authorized, empowered and permitted to issue, or cause to be issued, a summons returnable in the village justice court, or any other court of competent jurisdiction for the prosecution of said violation. (Ord. of 2-3-69 C.) ”
Defendants claim that the 15-day statutory notice of violation was not delivered to them with respect to the charges o(her than the 0.0. charges, where they are not applicable. They contend that if the notice does not have to be served before a summons is issued, then the ordinance is unconstitutional, being vague and ambiguous and lacking in due process. Their position is untenable. Section 9-21 specifically provides that a summons may issue notwithstanding the corrective features established in section 9-20. The People maintain that in an emergency situation a 15-day grace period would not be permitted and this is of course understandable and reasonable. Section 9-20 is clearly a procedural authorization for the issuance of a notice to remedy and is only a prerequisite to the filing of an information in a situation where it would be unreasonable not to *99 afford an opportunity to remedy an alleged violation. The reasonableness of the time afforded, of course, depends- on the circumstances of each case and is finally determined by the court rather than the inspector.
Defendant Shy also claims that the lack of standards to determine a “sanitary condition ” and the placing of that determination in the opinion of the housing inspector renders subdivision (d) of section 9-220 of the ordinance unconstitutional. It reads as follows: “ (d) Interior surfaces of multiple dwellings. The interior surfaces of walls throughout every part of every multiple dwelling, whether in public or in tenant occupied parts shall be painted, paper or paneled, and the ceilings kalsomined or painted by the owner. The walls and ceilings shall be repainted or repapered by the owner whenever necessary to keep the said surfaces in a sanitary condition, in the opinion of the superintendent of housing and inspectors and/or assistants, but in a case of surfaces which are to be renovated by painting, or by a similar technique, such renovation shall be performed at least once during any three (3) year period, unless sooner required by the department of housing in the manner set forth hereinabove. No wallpaper or similar wall covering shall be placed upon such a wall or ceiling surface unless all existing wallpaper or wall covering shall be first removed therefrom and such wall or ceiling thoroughly cleaned and repaired.” (Code 1964, § 32A-41).
The court is- of the opinion that painting of the walls and ceilings of an apartment or the lack thereof does not concern itself with a highly complex and technical area which requires standards for determination of 11 sanitary condition ’ ’. The final determination, again, is of course that of the court and not the housing inspector even though his opinion may have been properly introduced into evidence. The test of reasonableness, the use of common sense in making determinations in the area of housing violations and the burden of proof beyond a reasonable doubt resting on the shoulders of the accuser do not support defendant’s claim of unconstitutionality.
That the presumption of a statute’s constitutionality is settled law and in New York one alleging unconstitutionality must show that beyond a reasonable doubt. (McKinney’s Cons. Laws of N. Y., Book 1, Statutes, § 150, subd. b.) (Town of Hempstead v. Goldblatt, 19 Misc 2d 176.) The C.O. and painting ordinance, considered with the purpose of their enactments, cannot be said to be so unrelated or removed from the problem sought to be corrected or unreasonable or arbitrary in their enforcement. Before an ordinance can be declared unconstitutional its provi *100 sions must be clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals or general welfare. (Euclid v. Ambler Co., 272 U. S. 365, 389; 4 Rathkopf, The Law of Zoning and Planning, p. 4-5.)
For the reasons stated, the motions are in all respects denied. The within charges will be tried on June 1, 1972 at 2:00 p.m.