Thomas Aloi, J.
Defendant moves for an order pursuant to OPLR 6314 to vacate and set aside an order granting a preliminary injunction against the defendants, upon the ground that, pursuant to the stipulation entered into by attorneys for both parties, defendants could reopen and reargue the motion for said injunction upon the expiration of three months in the event that the litigation had not by that time been settled or otherwise terminated. Plaintiffs move pursuant to OPLR 3212 for an order granting summary judgment, declaring that Article 8 of the Revised General Ordinances of the City of ¡Syracuse (hereinafter referred to as Article 8) is unconstitutional and for a permanent injunction against the enforcement of Article 8.
The pertinent facts, briefly stated, indicate that plaintiffs, and the class of persons of which plaintiffs are representative, are persons conducting dance schools and classes within the City of Syracuse and therefore fall within the scope of Article 8’s mandates. The article purports to require licenses, costing $150, of persons conducting dance schools or classes within the City of Syracuse. This action was commenced by the service of a summons on defendants on February 15, 1974. A notice of motion for a preliminary injunction was served on defendants on February 21, 1974, and subsequently granted by Justice Robert Lynch on March 5, 1974, enjoining defendants from enforcing said Article 8. Incorporated within this order was the stipulation, agreed to by both parties, that if this action was not resolved within three months, the defendants could reopen and reargue the said motion. No action dispositive of this case has transpired since the stipulation was signed and therefore defendants have requested that the preliminary injunction be vacated and the original motion be reiargued. Plaintiffs have served defendants with a complaint alleging that Article 8 is unconstitutional on its face and as applied. The gravamen of their complaint states that the ¡article deprives them of due process and equal protection of the law; is in many critical areas hopelessly vague concerning what action is permitted or forbidden and totally unclear concerning what people fall within the classes governed by the statute; grants to the Chief of Police unlimited authority to unilaterally legislate rules and substantial discretion in enforcing or waiving the requirement of a license, without any guidelines or criterion; is being used as a pretext to enforce other valid statutes, i.e., fire codes and health code; and has an arbitrary and unreasonable cost of $150, which bears no rational relationship to the cost of supervising the premises and is confiscatory in nature. *262 Defendant has generally denied the afore-mentioned allegations and has tasked for judgment dismissing plaintiffs’ complaint.
It has long become axiomatic that municipal ordinances must conform with constitutional requirements and that an ordinance that violates the Constitution of the United States or of the State is void. (Cowan v. City of Buffalo, 247 App. Div. 591.) A municipality cannot use its delegated police power as a mere pretext for unconstitutionally depriving an individual of his rights (Cowan v. City of Buffalo, supra). In determining the constitutionality of a statute or ordinance, form is overlooked and substance and practical operation of the statute or ordinance are considered. Thus, the ordinance’s operative effect, rather than its theoretical rationale, serves as the focus for judicial scrutiny.
This court recognizes the long standing judicial propensity for upholding the constitutionality of municipal ordinances and statutes. Courts will not declare an ordinance unconstitutional merely because they think it imprudent or inexpedient, or because it operates harshly upon those persons it affects. Every presumption of constitutionality must be given to an ordinance if any rational consideration supports its enactment. This presumption reflects this court’s belief that the local legislative body intended not to violate the Constitution, but to enact a valid ordinance within the scope of its constitutional powers. (People v. Leshaw, 63 Misc 2d 364; Main Private Car Serv. v. Mayor of Yonkers, 71 Misc 2d 417.) If the constitutional questions raised are fairly debatable, courts must declare the ordinance constitutional, as they cannot and must not substitute their judgment for that of the local legislative body. (City of Buffalo v. Hawks, 226 App. Div. 480.) This court believes to do so would be a usurpation of a long-standing legislative function. However, this court stands totally prepared to declare an ordinance void upon constitutional grounds if it plainly contravenes some provision of the Constitution (Nebbia v. New York, 291 U. S. 502).
Objections to the constitutionality of an ordinance must be specific. Merely relying upon the assertion that an ordinance is “void for vagueness ” without competent evidence is insufficient to sustain this allegation. With respect to ordinances passed in the exercise of the police power, they cannot be declared unconstitutional unless their provisions are clearly arbitrary and unreasonable and have no relationship to the public health, safety, morals or public welfare. (People v. Shy, 70 Misc 2d 92.) The test for making this determination is *263 whether the ordinance is a bona fide exercise of the police power or an arbitrary interference with personal rights under the guise of an exercise of that power (Jell-O Co. v. Brown, 3 F. Supp. 132).
A leading treatise in this area states that the “requisites pertaining to ordinances generally govern licensing ordinances. Accordingly, licensing ordinances must be definite and certain, reasonable, uniform in operation and not arbitrarily or oppressively discriminatory * * * A licensing ordinance will not be held unconstitutional or invalid unless the unconstitutionality ■or invalidity appears on the face of the ordinance or is shown by competent evidence. The general rule that an ordinance is presumed to be reasonable, valid, land constitutional is applicable with respect to licensing ordinances and to the amount of a license fee or tax. ” (9 McQuillan,'Municipal Corporations [3d ed.], § 26.06, pp. 16-17.) In determining the effect of the invalidity of a section of a licensing ordinance vis-á-vis the entire ordinance, the general rule of severability is applicable. Thus, notwithstanding the unconstitutionality of a particular section of an ordinance, if it can be shown that it can be excised from the entire ordinance without destroying the ordinance’s intended purpose, the constitutionality of the remainder will be upheld.
In the case at bar, plaintiffs have alleged that the enactment and enforcement of Article 8 bias deprived them of due process and equal protection. The United iStates 'Supreme Court and other lower counts have consistently restrained from defining “ due process ” and “ equal protection ” with precision, but have considered each case which raises these issues on an ad hoc basis. (Dugan v. Ohio, 277 U. S. 61.) In making its determination of whether an ordinance violates the due process clause, the courts generally focus on whether the law is palpably arbitrary and a plain abuse of power. The requirement of due process does not preclude, and cannot interfere with, the proper exercise of the municipality police power, since a proper exercise of the police power constitutes due process. (Chambers v. Bachtel, 55 F. 2d 851.) Article 8 is a legitimate manifestation of the municipality police power which has been enacted for the protection and in furtherance of the health, safety and general welfare of the inhabitants of the city.
Equal protection of the law suggests the eradication of undue favoritism and unfair discrimination. Generally the courts have permitted a wide discretion in municipal classification, and do not regard a classification a violation of equal protection merely because it is not all-embracing, unless the municipal legislation *264 is clearly unreasonable. Courts should not interfere on constitutional grounds because the ordinance only applies to a particular class of persons,, When the evidence suggests that there is a reasonable basis for classification, the courts may not override the legislative determination. The proof must show that the classification is wholly without any rational basis and is essentially arbitrary. Merely showing that the classification is illogical or unscientific will not sustain plaintiffs’ burden of proof. (Adkins v. City of West Frankfort, 51 F. Supp. 532; Independent Dairymen’s Assn. v. City and County of Denue, 142 F. 2d 940.) In the instant case, plaintiffs have merely indicated that certain classes have been arbitrarily established with 'ambiguous boundaries, but they have not sustained their burden of proving that these classifications are unreasonable, without any national basis, or an improper exercise of the municipality police power.
Plaintiff has alleged that Article 8 gives substantial discretion and legislative authority to the Chief of Police to waive the requirement of a license and enact rules and regulations in making that determination without any guidelines or criterion. The Chief of Police is an appointed executive official who does not possess the authority to legislate ordinances or statutes. His basic responsibility is to protect the health, safety and general welfare of the community. No section of this article gives to the Chief of Police the authority to legislate ordinances which supersede those enacted by the Legislature. Section 5-109 merely grants to the chief the means of implementing the general intent of the entire article. Through this section, he has not usurped the power of the Legislature but has merely been given the means of fulfilling his responsibilities of protecting the public’s welfare. Furthermore, his discretion to refuse or waive the requirement of a license is not unlimited or without any guidelines because it can only be done ‘ ‘ for cause ’ ’. This court believes that these words are words of limitation which provide a viable and reasonable framework for the Chief of Police to operate.
Plaintiff has alleged that section 5-118 of Article 8 is improperly being used as a “ pretext ” to enforce other valid statutes (e. g., fire and health). Section 5-118 is not being used as a pretext to enforce other valid statutes but rather is used to establish prerequisites to the granting of a license. It has been held that a licensee must observe and comply with .all ordinances of the city in force presently which reasonably relate to the purpose of the regulation and are necessary to the public health and general safety.
*265 Furthermore, the prerequisite of a licensee having “ good moral character ” is not unconstitutionally viague. When the question of a licensee’s fitness or suitability to operate a business is in question, wide discretion must be given to eliminate those operations considered to be potentially or inherently a ■social menace. The question of moral character is a necessary and legitimate prerequisite to the granting of a license.
Plaintiff has alleged that the $150 license fee is (arbitrary and unreasonable. A license fee or tax under the police power is such a fee only as will legitimately assist in regulation and will not exceed the necessary or probable expense of issuing the license and of inspecting and regulating the business or other subject that it covers. It is beyond tbe scope of this court’s expertise to determine if it actually costs the city $150 to issue, process, regulate and investigate dance schools and classes. However, the fact that all prospective licensees must pay the same amount indicates that all persons in the same class are treated equally rather than arbitrarily. Furthermore, the fact that there have not been many licenses granted in the past decade does not eliminate the need of having the resources to pay for the issuance and policing of dance schools presently and in the future.
Accordingly, it is the decision of this court to deny plaintiffs ’ motion for summary judgment, and to grant defendants’ judgment dismissing plaintiffs’ complaint.