Morton L. Portnoy J.
The instant prosecutions consist of three alleged violations of section 2201 of the revised general Ordinances of the Village of Larchmont, which states as follows: "Section 2201, Watchman — Duties and Recording System. In all Hotels and Clubhouses as herein defined, located within the Village of Larchmont, there shall be one or more watchmen or clerks, employed by the owner whose duty shall be to visit every portion of the building at frequent regular intervals, but in any case not less frequently than hourly, between the hours of ten p.m. and seven a.m. for the purpose of detecting fire or other sources of danger and giving immediate and timely warning thereof to all occupants. There shall be provided a watchman’s clock, system or device to record movement of such watchman. Such watchman’s clock system or other device to record the movements of such watchman shall be installed in a manner and in locations satisfactory to the. Building Inspector and the Chief Engineer of the Fire Department or his deputy.”
The court finds that after three separate trials the People have sustained the burden of proof that the defendant did not have a night watchman on December 24, 1975, January 6, 1976, and April 28, 1976, as required by said ordinance. *10 However, the defendant in all the above proceedings raises serious questions of law concerning the constitutionality of said statute, particularly that said statute is vague in failing to set a standard for compliance and is logically and physically impossible to comply with; and that it is discriminatory in that it applies solely to hotels, and club houses and that the prosecution of the Doria Hotel, the only hotel in the Village of Larchmont, denies equal protection under the law to said hotel, and further that the enforcement of said ordinance without a search warrant was unconstitutional, and finally that the prosecution is insufficient in that there was no proof that any part of the premises were in fact occupied at the time of the alleged violation. This decision will be applicable to all three cases.
With respect to the last contention that an element of the People’s proof must include some evidence that the premises were in fact occupied, a reading of the ordinance clearly shows that occupation is not an element of the offense of having no night watchman. The primary purpose for a night watchman between the hours of 10:00 p.m. and 7:00 a.m. is "for the purpose of detecting fire, or other sources of danger.” The statute then goes on to say, "and giving immediate and timely warning thereof to all occupants.” The fact that if a fire or other sources of danger are detected, it goes without saying that the night watchman’s duty would be to warn all the occupants. Therefore, the verbiage in said ordinance requiring the warning of all occupants is mere surplusage. The intent and the primary purpose of the statute is to detect fire and other sources of danger. Looking at the ordinance another way, can it be said that if there are no occupants, there is no requirement for a night watchman? Hardly so! The fact that the premises may not be occupied, is all the more reason to have a night watchman to detect fire and other sources of danger. Accordingly, the lack of proof as to whether the premises were in fact occupied, if this be a lack of proof, is no impediment to these prosecutions.
The next objection raised by the defendant is that the ordinance is unconstitutionally vague in that it does not set forth a standard of conduct with which a property owner can reasonably comply. In support of this proposition, the defendant asserts that the village ordinance was modeled after section 67 of the Multiple Dwelling Law of the State of New York which requires the employment of a watchman, who *11 must visit every portion of the building at frequent regular intervals. The defendant asserts that such a standard of conduct as contained in the Multiple Dwelling Law can reasonably be complied with by a property owner. The village ordinance while embodying similar language to that contained in section 67 of the Multiple Dwelling Law substitutes the requirement of visiting every portion of the building at frequent regular intervals by requiring that such visits be not less frequent than hourly. It seems to this court that the requirement of hourly visits in lieu of the nebulous requirement of frequent regular visits makes the standard of conduct required of the property owner in fact more precise and capable of compliance.
There is a strong presumption that a statute duly enacted is constitutional. In order to declare a law unconstitutional, the invalidity of the law must be demonstrated beyond a reasonable doubt. (Matter of Van Berkel v Power, 16 NY2d 37, 40.) Therefore, since the village ordinance is in fact more precise, it is therefore not constitutionally vague, and unenforceable. Furthermore, there has been no testimony to the effect that a night watchman could not in fact visit every portion of the building not less frequently than hourly.
The defendant alleges that the ordinance requiring a night watchman is applicable solely to hotels and club houses and is discriminatory, since the Bevan Hotel is the only hotel within Larchmont and bears no reasonable relationship to the public interest in the preservation of life and property, which said ordinance purports to protect. Hotels and clubhouses are open to the public and attract large numbers of nonresident people for social activities primarily on a transient basis. They are equipped with restaurant and bar facilities and have kitchens capable of preparing food for large numbers of people. The danger of fire and other hazards is more likely in such accommodations. Packer Coll. Inst. v University of State of N.Y. (273 App Div 203, 207, revd on other grounds 298 NY 184) states: "That any business or occupation affected with a public interest may be regulated by the Legislature under its police power is a general principle too well settled to require the citation of any authorities”.
The Legislature may provide for different classifications without infringement of the equal protection guarantee and its discretion in this regard is broad, and will not be disturbed if any state of facts can reasonably be conceived to sustain the *12 classification. (Saratoga Harness Racing v New York State Quarter Horse Racing Comm., 42 AD2d 3, affd 33 NY2d 666.) As was stated in People v Bunis (9 NY2d 1, 4) in order for an exercise of the police power to be valid, there must be "some fair, just and reasonable connection” between it and the promotion of the health, comfort, safety and welfare of society.
By way of illustration, the Appellate Division, Second Department, in Matter of Pratt v Toffany (37 AD2d 854), declared a section of the Vehicle and Traffic Law constitutional although it permitted persons with junior operator’s license to operate a motor vehicle in certain parts of the State, and prohibited such persons from operating a motor vehicle in Nassau County as well as in cities having a population of one million or more persons. That court said (p 855): "A State may enact laws affecting only a particular class of people and such a classification will not be violative of equal protection of the laws when it is reasonable and is based upon some real or substantial distinction bearing a reasonable and just relation to the matter in respect of which the classification is imposed (Truax v Corrigan, 257 U.S. 312, 337).” In the case at bar, the nature of the facilities being regulated and its inherent hazards and dangers, provides a reasonable basis for the legislation in question. Accordingly, the village ordinance is not discriminatory and does not deprive the defendant of the equal protection of the law.
The defendant further contends that the prosecutions are the result of an illegal search without a search warrant in violation of the guarantees of the Fourth Amendment to the United States Constitution, which provides that "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated”.
In support of this proposition, the defendant cites Camara v Municipal Ct. (387 US 523) and See v City of Seattle (387 US 541). These cases involve the defendant’s refusal to permit a warrantless inspection of certain leased residential premises for the purpose of dwelling code enforcement (Camara v Municipal Ct., supra) and the refusal of a defendant to permit a representative of the fire department of the City of Seattle to inspect the defendant’s locked, commercial warehouse without a warrant. (See v City of Seattle, supra.) Both these cases held that such attempted search without the benefit of a warrant violated the defendant’s constitutional rights. How *13 ever, the facts in those cases must be distinguished from the facts in the instant matter. There, the Supreme Court was dealing with private residential (Camara case) and commercial property (See case) which was not open to the public. Here, we are dealing with a hotel open to the public, whereby the public may, and in fact is invited to come into its lobby, and other portions of the premises. The police officers who visited the defendant’s premises did no more than any ordinary member of the public was permitted to do under the circumstances. The police officers entered the public portions of the premises and remained there at least one hour, and did not observe a night watchman. This conduct under the circumstances of this case does not require a search warrant. Additionally, there was no refusal of entry by the defendant. As was stated in the Camara case (supra) the Supreme Court at pages 539-540 sets down the guidelines when and in what circumstances a warrant may be required. "Thus, as a practical matter and in light of the Fourth Amendment’s requirement that a warrant specify the property to be searched, it seems likely that warrants should normally be sought only after entry is refused unless there has been a citizen complaint or there is other satisfactory reason for securing immediate entry.” (Emphasis supplied.)
The distinction here made between public and private property is supported by the United States Supreme Court in the See case (supra) where that court stated on page 545: "We therefore conclude that administrative entry, without consent, upon the portions of commercial premises which are not open to the public may only be compelled through prosecution or physical force within the framework of a warrant procedure.” (Emphasis supplied.) The See case recognized the distinction between commercial premises that are not open to the public and such premises as may be open to the public. Since we are here dealing with a hotel open to the public, a search warrant is not required. Time and experience have taught us that the enforcement of the ordinances pertaining to the safety, health and welfare of our community is indispensable, while at the same time the constitutional rights of the people must be protected. I find that these constitutional rights have not been violated and accordingly I find the defendant guilty in each of the prosecutions.