PACKER COLLEGIATE INSTITUTE, Plaintiff, v. UNIVERSITY OF THE STATE OF NEW YORK et al., Defendants.

Third Department, January 7, 1948.

*McLanahan, Merritt & Ingraham,* attorneys (*Henry A. Ingraham, Henry G. Ingraham* and *John J. Boyle* of counsel), for plaintiff.

*Nathaniel L. Goldstein, Attorney-General* (*Wendell P. Brown, Solicitor-General* and *John R. Davison, Assistant Attorney-General* of counsel), for defendants.

FOSTER, J. This controversy is submitted upon an agreed statement of facts. Plaintiff challenges on constitutional grounds the validity of the following paragraph (subd. 2, par. e) of section 3210 of the Education Law (former § 625, subd. B, par. 5). *"Registration of certain private schools.* No person or persons, firm or corporation, other than the public school authorities or an established religious group, shall establish or maintain a nursery school and/or kindergarten and/or elementary school giving instruction in the [subjects included in section six hundred and twenty, subdivision c, paragraph one-a, of this article] ten common school branches of arithmetic, reading, spelling, writing, the English language, geography, United States history, civics, hygiene and physical training, unless the school is registered under regulations of the commissioner [prescribed by the Board of Regents]. Upon complying with the said regulations and after payment of a fee of twenty-five dollars a certificate of registration shall be issued by the department which shall be valid for a period of two years from the date of issuance unless suspended or revoked within said period pursuant to said regulations. Such registration may be renewed biennially thereafter upon the payment of a renewal registration fee of twenty-five dollars."

Pursuant to the authority thus vested in him the Commissioner of Education has adopted certain regulations, approved by the Board of Regents, under which private schools covered by the statute may be registered. Briefly paraphrased they are:

1. To obtain registration a school must apply upon forms prescribed by the commissioner, who shall determine the eligibility of the school on the facts presented.

2. Registration is given to a school for a specific number of children, and at a specific location which may not be changed without the approval of the commissioner.

3. Registration shall be for two years; and for renewals schools shall be required to conform to any changes in regulations.

4. No school shall be registered if it puts out misleading advertising.

5. (a) Elementary schools, nursery schools and kindergartens shall have at least six pupils enrolled; (b) the program and curriculum shall meet standards established by the commissioner; (c) the financial resources of the school must be adequate to maintain an approved educational program; (d) the qualifications of the teaching staff must be substantially equivalent to public school standing; (e) the number of children per teacher shall be such as to insure proper education for children of different age levels; (f) adequate equipment and space shall be provided for both indoor and outdoor education; (g) adequate provisions shall be made for health, safety and sanitation with certain specific requirements and restrictions as to buildings, floors used, fire escapes, toilets, etc.; (h) opportunities for parent education as may be necessary to make the program effective for children shall be provided; (i) schools shall be in session approximately the same number of days as public schools; (j) adequate records shall be kept.

6. Only registered schools may use the word "school" or "kindergarten" in advertising.

7. Schools established prior to 1939 which do not meet all such standards may nevertheless be registered if they can offer equivalent standards acceptable to the Commissioner of Education, except that no school shall be registered which does not have local fire and health approval.

The regulations thus paraphrased are those approved by the Board of Regents on February 28, 1947, and submitted on the argument of the case. They are not quite identical with those set forth in the exhibit annexed to the agreed statement of facts, which were adopted in 1939 and amended in 1943. We assume of course that the later regulations are those to be examined in our consideration of the case.

Plaintiff is a private educational institution for girls, incorporated by a special act of the Legislature on March 19, 1853. Among other things it maintains a nursery school, a kindergarten and an elementary school. None of these are supported by the public school authorities or by any established religious group. In the operation of these schools plaintiff comes within the statute quoted and the regulations enacted thereunder. It refuses however to apply for registration and asserts that both

the statute and the regulations are unconstitutional on the following grounds.

First, that they are not a proper and legitimate exercise of the police power of the State, and contravene the Fourteenth Amendment, section 1, of the Constitution of the United States, and article I, section 11, of the New York State Constitution. Second, that they are in violation of the same Federal and State constitutional provisions in that they discriminate against nonsectarian private schools in favor of sectarian schools, and deprive the former of their property without due process of law. Third, that the statute complained of constitutes an unlawful delegation of legislative power, and the regulations an exercise of power improperly delegated, in violation of article III, section 1, of the New York State Constitution.

It may be observed that the only direction to the Legislature in the State Constitution concerning education, aside from the continuance of a State university and regents, is to maintain a system of free common schools (article XI, § 1). Nothing is said about the regulation of private schools, and if such regulation is to be assumed it can only be justified as an exercise of police power. That any business or occupation affected with a public interest may be regulated by the Legislature under its police power is a general principle too well settled to require the citation of any authorities. It is, we think, an indisputable fact also that all schools, public or private, are affected with a public interest, and hence subject to reasonable regulation under the police power of the State. The fact that prior to 1939 the State had never entered the field of regulating private nursery schools and kindergartens is not a sound reason for denying its power to do so now. The existence of such power is assumed even in those cases, cited hereafter, where specific compulsory laws or prohibitions have been held invalid.

Regulation however is one thing, and compulsion or prohibition which offends against a fundamental freedom of choice is quite another matter. Thus, the State cannot compel children to attend free public schools when their parents desire to send them to parochial schools (*Judd* v. *Board of Education,* 278 N. Y. 200; *Pierce* v. *Society of Sisters,* 268 U. S. 510). By the same token the State may not compel children to attend public schools when their parents desire to send them to nonsectarian private schools. Nor may the State prevent a private school from teaching a useful and harmless subject, such as a foreign language (*Meyer* v. *State of Nebraska,* 262 U. S. 390), or adopt a regulation that no foreign language school may be conducted without a license (*Farrington* v. *Tokushige,* 273 U. S. 284).

These cases are illustrative of the principle that freedom of choice as to the education of children, and the teaching of subjects not immoral or clearly inimical to the existence of society may not be denied under the police power.

But reasonable regulation is not a denial of these rights. That the State, as *parens patriæ* of immature children, may legislate for their safety, health, morals and general welfare, is a proposition not open to dispute (*People* v. *Ewer*, 141 N. Y. 129; *People* v. *Braunstein*, 248 N. Y. 308). Regulations as to buildings, equipment, financial resources, safety appliances, sanitary conveniences, hours of study or training, and the like, all come within this general legislative power, and do not conflict with any basic rights guaranteed by either the Federal or the State Constitution. In addition we think the State may impose minimum scholastic and training standards, including qualifications for teachers, for both public and private nurseries, kindergartens and elementary schools. Above and beyond such minimum standards the private institution may furnish a better curriculum, training and teaching if it desires to do so. But the State has a pre-eminent interest in basic or minimum standards. The assertion of this interest does not deny a choice of schools or a reasonable choice as to training and curriculum. We reach the conclusion, therefore, that the statute requiring registration by private schools in the categories specified is not beyond the police power of the State, and that the regulations promulgated thereunder are not arbitrary and unreasonable. That the Legislature may have enacted the statute in question without legislative hearings or recorded debates we regard as of no consequence. The statute on its face bears the mark of a legitimate purpose, viz.: to legislate for the health, safety, and general welfare of children.

Plaintiff also asserts discrimination in favor of sectarian as against nonsectarian schools. Every distinction drawn in legislative regulation does not amount to an illegal discrimination. There is a distinction in fact between sectarian and nonsectarian schools. One is supported by a group commonly considered to be dedicated to the protection of public and private morals. The other may or may not be supported by those who have such a design and interest, but common repute has it that many nonsectarian private schools are operated primarily for profit. The Legislature was not required for regulatory purposes to cast both types of schools in the same mold. An act does not discriminate unconstitutionally against one class simply because it does not embrace all classes, where room for some distinction exists. The Legislature may choose for regula-

tion the class where harmful effects are more apt to exist (*People ex rel. Bryant* v. *Zimmerman,* 241 N. Y. 405; *Matter of Williams* v. *Walsh,* 289 N. Y. 1; *Radice* v. *New York,* 264 U. S. 292). Perhaps the most extreme example of such a choice may be found in *People* v. *Havnor* (149 N. Y. 195). With the wisdom of such a choice the courts have nothing to do; it is a matter solely for the Legislature to consider.

Finally plaintiff argues that the statute in question constitutes an unlawful delegation of legislative power in violation of the constitutional mandate that the legislative power of the State shall be vested in the Senate and Assembly (N. Y. Const., art. III, § 1). If plaintiff's argument is sound the whole educational system of the State is subject to attack, for inherent in the system are innumerable instances of delegated power to make rules and regulations. The power to lay out school districts, to approve plans for the erection of school buildings, to apportion public moneys and to withhold the same, to prescribe qualifications for teachers, curriculums and standards of training, are among some of the powers thus delegated. We appreciate that these deal with public schools but the principle of delegated power is the same nevertheless. This court has held that the regents have legislative powers to establish rules and regulations for carrying into effect the laws and policies of the State relating to education (*Buhl* v. *University of State of New York,* 268 App. Div. 530). Where it is impractical for the Legislature to prescribe a specific rule of action in any license case a reasonable amount of discretion may be delegated to administrative officials (*Matter of Marburg* v. *Cole,* 286 N. Y. 202). This ruling fits the controversy here. Obviously it would be impractical for the Legislature to cover by statutory enactment the detail and minutiæ required for the adequate regulation of private schools, or to attempt to set up standards that would necessarily involve the same details. We do not find, therefore, that the statute illegally delegates legislative power.

Defendants may have judgment, without costs, declaring and adjudging that paragraph e of subdivision 2 of section 3210 of the Education Law (formerly § 625, subd. B, par. 5) and the regulations promulgated thereunder by the Commissioner of Education with the approval of the Board of Regents are valid and constitutional; and that plaintiff may be enjoined and restrained from maintaining a nursery school, kindergarten or elementary school until registered in the manner required by such statute and regulations.

HILL, P. J., HEFFERNAN, RUSSELL and DEYO, JJ., concur.

Judgment to be entered in conformity with the opinion herein, in favor of the defendants, without costs.