Mario Pittoni, J.
The town sues to enjoin the defendants from mining and dredging a certain sand pit located on the east side of Newbridge Avenue in the East Meadow section of the town until the defendants obtain a permit required by Town Ordinance No. 16, and until violations of section 4 of that ordinance are cured.
The defendants in their answer claim res judicata, protection of the ex post facto, of the due process, and of the equal protection clauses of the Constitutions, and the motives of the town officials as defenses.
It appears that the subject property, hereinafter sometimes called the sand pit, is 38 acres in size and has been used for the commercial mining of sand and gravel since 1927.
On December 18, 1945 the town adopted Ordinance No. 16 entitled, 1 ‘ Bank and Pit, Topsoil Removal and other Excavations ”. Its declaration of policy (§ 1) states among others that the ordinance was “ to prevent all manner of excavations which create pits, holes, or hollows in the earth, leaving it in a hazardous or dangerous state, or cause soil erosion * * * to remove the danger to health and life caused by deep excavations remaining in the ground * * * which ordinance will promote the safety, health and general welfare of the people of the Town ’ ’.
The ordinance then goes on to say:
Section 4 (as amended Nov. 25, 1958) (a) No Pit Excavation shall be made within twenty (20) feet of any property line.
(b). No pit or bank excavation shall be made greater than ten (10) feet below the established grade of the nearest public street or highway unless the side walls remain at an incline of at least two horizontal feet to one vertical foot or are supported by retaining walls * * *.
(e). 6 * * All pit and bank excavations shall be completely surrounded by wire fencing of the type known as chain link or cyclone fence, or its equivalent, of the height of six (6) feet set on a concrete curb not less than 18 inches in depth, with no opening except necessary gates for ingress and egress, to prevent public access to the top of any pits or deeply graded slopes.
(e). No removal of earth from the ground shall be so made as to undermine, weaken or deprive of support other lands in the vicinity * • *
*179 (g) . No removal of earth from the ground shall be so made as to prevent or interfere with the orderly development, for residential, business, manufacturing or public purposes, of other lands in the vicinity, * * * or as to substantially depreciate the value of real property in the vicinity.
(h) . No excavation shall be made below two feet above the maximum ground water level at the site.
(i) . The Town Board may deny any application for a permit hereunder if it shall find that the proposed excavation will violate any of the provisions of this section, * * *.
(j) . When earth has been removed from any part of any pit excavation area to the maximum extent allowable under this ordinance, * ‘‘ * such pit or part thereof shall be immediately refilled with clean, non-burnable fill *' * * and the premises, after completion of the removal of earth from the entire pit excavation area shall be so filled and graded to the levels of the nearest abutting streets or roads.
In the meantime, and since the subject property was first used as a commercial sand mining and dredging operation, the surrounding area of East Meadow has changed from a sparsely to a densely populated region, and the subject property has become a huge crater, or sand pit, in which there is an artificial lake that extends over 20 acres of the pit. The average depth of the water in this lake is approximately 25 feet, but in some areas the water is as deep as 48 feet. There is a link fence around the sand pit, but there is no concrete curb beneath it; and there are several holes under this fence, evidently dug by children, and large enough for human beings to crawl through. In numerous areas the pit commences at a distance less than 20 feet from the nearest property line, and in at least one instance the excavation commences at a distance less than 10 feet. The slopes of the sides of the pit in many places exceed two horizontal feet to one vertical foot. Also, the pit is more than 10 feet below the grade of the nearest public street.
Within a radius of 3,000 feet of the center of the sand pit are 2,200 homes with an estimated population of 8,800 persons; within a radius of 3,500 feet are 4 public schools with an enrollment of 4,532 pupils; and within a radius of 1,500 feet of this pit is a church where each week 3,600 pupils receive religious instruction.
Evidence on behalf of the defendants establishes that there are certain excavations, some dry and some water filled, and bodies of water such as lakes, brooks, streams, creeks, etc., within the town which are not in conformance with the standards of the ordinance. However, there was no evidence as to whether these excavations and bodies were private, governmental, in use, or abandoned. A New York City-owned reservoir with no fence and a sharp slope was also shown.
*180 A county official called by the defendants testified that there are approximately 400 water drain basins or sumps in Nassau County. Of these 300 are owned and supervised by the county and have fences around them; but approximately 100 of these still have no concrete curbs under the fences although the county has since 1952 been installing these curbs. The berm width specifications for these county sumps vary with the nature of the sand and the topographical conditions encountered. It was pointed out too that sumps by and of their very nature must be constructed so that the bottom is above maximum level, and that the standard regulation for the construction of sumps calls for a minimum of two feet above maximum ground water.
The first defense raised by the defendants is res judicata. This is based upon a judgment entered April 9, 1956 in an action by the town against the same defendants to enjoin them from operating the sand pit in violation of a zoning ordinance. Mr. Justice Hill, citing People v. Miller (304 N. Y. 105) and Town of Somers v. Camarco (308 N. Y. 537), denied the injunction on the ground that the defendants’ substantial operation of the sand pit prior to the enactment of the zoning ordinance entitled the defendants to a nonconforming use. The issue in that case was one of vested property rights in the face of subsequently enacted zoning restrictions. The present action by the town is pursuant to an ordinance which regulates uses regardless of locations or zones under its governmental police powers for “ the safety, health and general welfare of the people of the Town ” (Ordinance No. 16, § 1). In the very Town of Somers v. Camarco (308 N. Y. 537, 541, supra) case cited by Mr. Justice Hill, the court said: “ We do not pass upon the question of what may be a proper exercise of the town’s police powers so as to prevent the creation or maintenance of a nuisance on the premises of the defendants, or to otherwise lawfully regulate the defendants’ business.”
A judgment in one action is not conclusive when the two causes of action are different in the rights and interests affected, and the estoppel of res judicata is limited in such circumstances to the point actually determined. It is clear, therefore, that the causes of action and the issues of these two cases are not the same, and that the substance of the rights or interests established in the first action will not be destroyed or impaired by the prosecution of the second (Schuylkill Fuel Corp. v. Nieberg Realty Corp., 250 N. Y. 304, 307, 308).
It should be added that a motion by the defendants to dismiss a similar complaint against them by the town on the grounds of res judicata was denied by Mr. Justice Christ on September *181 13, 1956 (No. 6447-1956, Cal. No. 209) when he said: “it is plain that the issues indicated by the present complaint were not adjudicated in the prior action ’ ’.
Another defense is that the sand pit was operated prior to the enactment of the ordinance and for that reason is immune against the exercise of this regulatory police ordinance. However, it is firmly established that a prior nonconforming use, whether judicially declared or not, does not make it immune against laws, ordinances and regulations of a police nature such as the one now in issue (Queenside Hills Co. v. Saxl, 328 U. S. 80, 84; Matter of Engelsher v. Jacobs, 5 N Y 2d 370, cert, denied 360 U. S. 902; Health Dept. v. Rector of Trinity Church, 145 N. Y. 32, 43, 44; Town of North Hempstead v. Colonial Sand & Stone Co., 14 Misc 2d 727, 731 [Hogan, J.]; People v. Gerus, 19 Misc 2d 389, 393-395 [Nassau County, Johnson, J.]).
The defendants also argue that the ordinance applies only to sand pits which are to be started in the future and that it does not apply to sand pits in being at the time of its enactment. A reading of the ordinance shows no provision exempting sand pits in operation at the time of its enactment, and it is obvious that the ordinance was intended to apply also to pits already in being and in operation. Whereas the opening of future sand pit excavations could be controlled by zoning regulations, the only protection against the abuse of existing uses has to come from these regulatory ordinances. This is particularly true when it has already been held that the defendants have the right to a nonconforming use under the authority of People v. Miller (304 N. Y. 105,107) and Town of Somers v. Camarco (308 N. Y. 537, supra). Under the circumstances, it would be unreasonable to hold that the town, which was aware of the dangers posed by unregulated excavations (see Declaration of Policy of Ordinance No. 16, § 1), could have intended to exempt the sand pits in operation at the time of the adoption of the ordinance. Ordinances similar to this one have been interpreted as applying to sand pit uses in being at the time of the enactment of the ordinance {Town of North Hempstead v. Colonial Sand S Stone Co., 14 Misc 2d 727, 731, supra [Hogan, J.]; People v. Gerus, 19 Misc 2d 389 [Johnson, J.]). In the Town of North, Hempstead v. Colonial Sand & Stone Co. case, Mr. Justice Hogan said (p. 731): “Nor is there merit in their contention that the ordinance, by its express language, is intended to apply only to operations commenced after its adoption. It is a well-settled rule of statutory construction that an act shall be interpreted in the light of the mischief felt and the objects and the *182 remedy in view (McKinney’s Cons. Laws of N. Y., Book 1, Statutes, § 95 and cases cited therein). The Town Board cannot have intended in 1946, that an established operation should be permitted to continue untrammeled while a new one of precisely the same nature required drastic controls. It is equally well settled that ‘ A construction of a statute is favored which makes it operate equally on all classes of persons and avoids unjust discrimination ’ (McKinney’s Cons. Laws of N. Y., Book 1, Statutes, § 147). Accordingly, the court holds that the ordinance is intended to operate equally upon all operations of a similar nature, regardless of the date upon which each was commenced. This interpretation needs no reconciliation with the Declaration of Policy, the premable of the ordinance (supra).”
Still another defense raised by the defendants is ex post faato. Obviously, such a defense has no place in this civil trial; that doctrine applies only to criminal cases (Calder v. Bull, 3 Dall. [3 U. S.] 386, 390; Kentucky Union Co. v. Kentucky, 219 U. S. 140, 152, 153; Bankers Trust v. Blodgett, 260 U. S. 647, 652; Matter of L’Hommedieu v. Board of Regents, 276 App. Div. 494, affd. 301, N. Y. 476; 16 C. J. S., Constitutional Law, § 99, pp. 435, 437).
The defendants also contend that the ordinance is unconstitutional in that it is confiscatory and unreasonable as applied to them. In this respect they contend that the plaintiff has failed to establish the reasonableness of the ordinance itself. But it is fundamental that an ordinance such as this is presumed constitutional (Borden’s Co. v. Baldwin, 293 U. S. 194, 209, 210); that the burden of showing the ordinance to be unreasonable rests upon the assailant (Wiggins v. Town of Somers, 4 N Y 2d 215, 219; Shepard v. Village of Skaneateles, 300 N. Y. 115, 118; New York Trap Rock Corp. v. Town of Clarkstown, 1 A D 2d 890 [2d Dept.], affd. 3 N Y 2d 844) and that this unconstitutionality must be established beyond a reasonable doubt (Wiggins v. Town of Somers, 4 N Y 2d 215, 219, supra, Defiance Milk Prods. Co. v. Du Mond, 309 N. Y. 537, 540, 541). Only as a last resort may courts strike down legislative enactments on the ground of unconstitutionality (Wiggins v. Town of Somers, 4 N Y 2d 215, 219, supra, Matter of Ahern v. South Buffalo Ry. Co., 303 N. Y. 545, 555, affd. 344 U. S. 367).
Under the tests as above stated the defendants have failed to sustain their burden of proof; in fact, little, if any, evidence was adduced to show the unreasonableness of the provisions concerning the width of the berms, fences, depth requirements and the like. They did give testimony that no cave-ins had *183 occurred at the sand pit within the past 30 years. However, even if that be true, the town is not precluded from anticipating a danger and providing for a protection against it before it materializes. This is proper within its police power (City of Rochester v. West, 164 N. Y. 510, 514; Town of Southport v. Ross, 284 App. Div. 598 [3d Dept.].) Against this danger clearly recognized by the town (Ordinance No. 16, § 1), the defendants produced nothing to show that the ordinance had no reasonable relation to the dangers and undesirable features inherent in their sand pit.
Even without the benefit of the presumption of validity the provisions of the ordinance are clearly suited for the curtailment of the obvious dangers. Thus, the requirements concerning setbacks, slope requirements, fences, retaining walls, maximum ground levels and other such requirements, all provide protection against the danger of cave-ins, falls and drownings. These requirements are particularly pertinent here where the sand pit is a huge sprawling crater filled with water to an average depth of some 25 feet and forming a permanent, artificial lake of stagnant water in a densely populated community with thousands of children.
Then too, the right to use one’s property may run in conflict with the interests of adjoining land owners. It is one thing to use your property — it is another to empty, to exhaust or to deplete your property so as to cause cave-ins or otherwise undermine the properties of adjoining land owners. It is obvious without further belaboring the point that the deeper the digging and the closer to the adjoining land, the greater the danger to the latter and the homes thereon caving in.
Other considerations, such as the detrimental effect of this sand pit on the property values in the neighborhood, although not by themselves persuasive, add support to the reasonableness of this ordinance (Matter of Wulfsohn v. Burden, 241 N. Y. 288, 298; Post Brick Co. v. Thompson, 68 N. Y. S. 2d 159 [Hallinan, J.]; People v. Gerus, 19 Misc 2d 389, 397 [Johhson, J.], supra).
It may be that the enforcement of this ordinance will result in some economic hardship to the defendants; however, the exercise of police power in the interests of the public at large is generally in conflict with individual interests; and if the end sought is legitimate and the law is not arbitrary the individual interest must bow to the interest of the general welfare. This is particularly true when the object of the law poses a serious threat to public safety (Matter of Wulfsohn v. Burden, 241 N. Y. 288, 302, supra, Hadacheck V. Los Angeles, 239 U. S. 394).
*184 In support of the defendants’ contention that their property is being* confiscated, there is nothing* in the evidence to sustain it. There is no evidence to show that the defendants cannot conform to the ordinance or what the cost to the defendants would be if they attempted to conform. Under the circumstances the court cannot guess or read into the record proof which is not there (City of Yonkers v. Rentways, 304 N. Y. 499, 505). In the Bentways case, Judge Fuld said: ‘ ‘ defendants, though they have attacked the ordinance as confiscatory, have completely failed to establish or present proof that there has been confiscation in fact. * * * Completely absent is any showing that * * * if such construction were impossible, that such could not be converted to some other profitable use.”
Even if the defendants had established that the enforcement of the ordinance were a practical prohibition, it would not be of assistance to them in this case where the danger to the public safety and welfare is a real and serious one. (Hadacheck v. Los Angeles, 239 U. S. 394, supra; People v. Gerus, 19 Misc 2d 389, 393-395, supra [Johnson, J.]; Lissa & Sons, Inc. v. Town of Hempstead, 19 Misc 2d 403 [Johnson, J.], affd. 272 App. Div. 921.)
Although the defendants did not allege the protection of the equal protection clauses of the Constitutions in their answer, they did take the position at the trial that the prosecution of his action against them constitutes discriminatory enforcement ; that is, a failure to enforce the ordinance as against “ other areas which violate the same ordinance ’ ’. If we assume, for the sake of argument, laxity on the part of the public officials in the enforcement of the ordinance so as to result .in unequal application of the law, that would not by itself constitute this present action a violation of the equal protection clauses. It is only where the party affected can show a palpable and deliberate scheme to oppress him Avhile excluding all others who come Avithin the terms of the ordinance that such an objection can be sustained (Williamson v. Lee Optical Co., 348 U. S. 483, 489; Snowden v. Hughes, 321 U. S. 1, 8, 15; People v. Friedman, 302 N. Y. 75, 80, 81).
In the Friedman case the court said that it is not required under the equal protection clauses that the ordinance “ be perfectly symmetrical in its pattern of exclusions and inclusions ”. And again, quoting from the same case, the proof here does not show “ a pattern of discrimination consciously practiced, as in Yick Wo v. Hopkins (118 U. S. 356); it merely indicated some nonenforcement as to certain other businesses many of which *185 were allowed to remain open for the sale of permitted commodities
An examination of the defendants ’ evidence fails to show that they have sustained their burden of proof in this respect. Their evidence merely establishes that certain excavations, some dry and some water-filled, and certain bodies of water, such as lakes, brooks, streams, creeks, etc., within the town exist without conforming to the standards of the ordinance involved. The defendants have failed to show whether these excavations and bodies of water were private, governmental, abandoned or in use. Furthermore, none of these were shown to be presently operated or operating sand pits; against which the ordinance is directed. Also, during the trial the defendants took the position that the ordinance should have been enforced against the Nassau County sumps; however, these county properties are dedicated to a vital public use and, therefore, do not come within the terms of the ordinance (§§ 2, 9). Then too, what authority would the town have to act against the county, another and superior governmental body?
If the defendants contend that the exemption of these county properties constitutes discrimination, not in the enforcement but on the face itself, then too that contention is not acceptable. The equal protection clauses do not deprive a municipality of the power to classify in the adoption of police power regulations; for it is well recognized that evils in the same area may be of different dimensions and proportions requiring, at least in the legislative body’s opinion, different remedies (Tigner v. Texas, 310 U. S. 141); and the legislative body may confine its regulations and restrictions to those cases where the need is deemed to he clearer or more apt to exist (Packer Collegiate Inst. v. University of State of N. 7., 273 App. Div. 203, 208, 209 [3d Dept.]; West Coast Hotel Co. v. Parrish, 300 U. S. 379). “ With the wisdom of such choice the courts have nothing to do; it is a matter solely for the Legislature to consider.” (Packer Collegiate Inst. v. University of the State of N. Y., 273 App. Div. 203, 209, supra [3d Dept.].)
Clearly, there is a sufficient basis for the classification in the present ordinance. These county sumps, or hasins, differ from the permanently flooded sand pit involved herein. First, the existence of these basins or sumps is a necessity throughout Nassau County as a matter of survival. They must from time to time contain varying amounts of rain water; but this is not a permanent condition. It continues or lasts only so long as it is necessary for the trapped waters to run back into the ground. *186 Furthermore, these basins or sumps all fall within the jurisdiction of the County of Nassau and are subject to the rules and regulations of that municipality. Thus, the county sumps or basins are sufficiently distinct from the sand pit or sand pits affected by the ordinance to take this case out of the equal protection clauses of the Constitutions.
The defendants’ further contention that the town has failed to sustain the burden of proof on the inadequacy of a remedy at law is specious. The power to bring a criminal prosecution against the defendants for a violation of the ordinance herein is not such an adequate remedy at law which ordinarily bars injunctions. That is hornbook law for which no citation is needed. Furthermore, section 135 of the Town Law states: “ The town board may # * * maintain an action or proceeding in the name of the town in a court of competent jurisdiction to compel compliance with or to restrain by injunction the violation of any * * * ordinance, rule or regulation, notwithstanding that the ordinance, rule or regulation may provide a penalty or other punishment for such violation.” (Town Law, § 135, as amd. by L. 1955, ch. 326, L. 1958, ch. 606; emphasis supplied.)
The last point raised by the defendants is the alleged motives of the town officials in bringing this injunction suit to court. It must be pointed out at the very outset that on principle alone this contention is not acceptable. Any prior action or lack of action on the part of public officials may not be used as a bar to the bringing of an action when the action is in a representative .capacity on behalf of the public. Public officials have no power and no right to waive their duties or obligations to enforce the law on behalf of the public for whom they are public servants. In other words, their individual actions are not binding upon the public whom they serve and on whose behalf actions such as this are and must be prosecuted. In short, the motives of the officials enforcing the ordinance are not relevant in this case (Chase-Hibbard Milling Co. v. City of Elmira, 207 N. Y. 460, 467; Waterloo Woolen Mfg. Co. v. Shanahan, 128 N. Y. 345, 362).
In the Chase-Hibbard case (supra, p. 467) the court said: “ If the public authorities were authorized to do what they did do with the river channels, the reasons that moved them do not concern the plaintiff. * * * The assignment of an improper motive, or reason, for doing an act, which the municipality was authorized to perform could not make the act illegal. ’ ’
In the Waterloo case (supra, p. 362) the court said: “ If the state has the right * * * then the motives that underlie *187 the act are not material. The reasons that move the public authorities do not concern the plaintiff. ’ ’
It does not appear that the defendants have raised any other issues.
The court thus finds that Ordinance No. 16 and the enforcement thereof are valid exercises of the town’s police power; the plaintiff is therefore entitled to the relief demanded in the complaint.
This is the decision of the court pursuant to section 440 of the Civil Practice Act.
Settle judgment on notice.