Ronnie C. MOORE, Commissioner of Insurance of the Commonwealth of Kentucky in his capacity as Liquidator of Delta America Re Insurance Company, Plaintiff,

v.

NATIONAL DISTILLERS AND CHEMICAL CORPORATION, a foreign corporation, et al., Defendants.

No. 91 Civ. 2901 (JSM) (KAR).

United States District Court,
S.D. New York.

Aug. 14, 1992.

On Motion for Reargument Sept. 4, 1992.

As Amended Sept. 11, 1992.

---

W. Henry Jernigan, Jr., Jacqueline S. Duncan, Jackson & Kelly, Lexington, Ky., for plaintiff Ronnie C. Moore.

William F. Costigan, Patricia A. Griffin, Anderson Costigan, New York City, for plaintiff Ronnie C. Moore.

Perry Kreidman, Ann Marie C. Petry, David Hebbeler, Michael Adler, Wilson, Elser, Moskowitz, Edelman & Dicker, New York City for defendant Retrocessionaires Arion Ins. Co., Ltd., Assubel Accidents et Dommages, Atlantica CIA Nat. De Seguros (now known as Bradesco Seguros), Banco De Seguros del Estado (also known as BSE Banco De Seguros Del Estado), Caisse Mutuelle D'Assurances et de Prevoyance, Cent. Reinsurance Corp., Chiyoda Fire & Marine Ins. Co., Ltd., CIA Internacional de Seguros, Hassneh Ins. of Israel, Ltd., Instituto de Resseguros do Brazil (also known as I.R.B.), Korean Reinsurance Co., Kyoei Mutual Fire & Marine Ins. Co., Ltd., Presence Assurances (formerly known as La Providence I.A.R.D. and Groupe Presence), Mingtai Fire & Marine Ins. Co., Ltd., Nippon Fire & Marine Ins. Co., Ltd., Overseas Union Ins. Co., Ltd., Pohjola Group (formerly known as Pohjola Ins. Co., Ltd.), Seguros La Provincial, S.A., SNL Ins. Co.,

Ltd. (in liquidation), and Transport Industries Ins. Co., Ltd.

Larry W. Thomas, Gregory J. Bendlin, Cameron & Hornbostel, New York City, for defendant Retrocessionaires Grupo de Empresas Seguradoras Brasileiras and Compania Bandeirante de Seguros Gerais.

Mark S. Fragner, Kroll & Tract, New York City, for defendant Retrocessionaire Chung Kuo Ins. Co.

## OPINION AND ORDER

KATHLEEN A. ROBERTS, United States Magistrate Judge:

Presently before the court is a motion by the defendant retrocessionaires to be relieved of the requirement that they post pre-answer security pursuant to N.Y. Ins. Law § 1213(c)(1).

For the reasons set forth below this motion is denied except as to defendants Banco de Seguros del Estados; Instituto De Resseguros Do Brasil; and Grupo de Empresas Seguradoras Brasileiras. The motion is denied as to defendant Chung Kuo Insurance Company unless it submits within twenty days an affidavit demonstrating its status as a foreign state.

### Background

This action arises from the liquidation of Delta America Re Insurance Company ("Delta Re"), an insolvent reinsurance company chartered under the laws of Kentucky and authorized to do business in New York. Plaintiff, Commissioner of Insurance of the Commonwealth of Kentucky[1], is the statutory liquidator of insolvent domestic insur-

ers in Kentucky and was therefore appointed by the Kentucky Circuit Court to supervise the dissolution of Delta Re.

Delta Re's parent company is Delta Holdings, Inc. ("DHI"). DHI acquired Elkhorn Insurance Company ("Elkhorn") from National Distillers and Chemical Corporation ("NDCC") on September 30, 1983,[2] and subsequently changed Elkhorn's name to Delta Re. NDCC changed its name to Quantum Chemical Corporation on January 4, 1988.

There are now five actions in this court brought by the Liquidator of Delta Re. Two of these, *Moore v. American Risk Management, Inc., et al.*, 89 Civ. 2999 (JSM) (KAR) and *Moore v. National Distillers and Chemical Corp., et al.*, 91 Civ. 2901 (JSM) (KAR), relate to Delta Re's role as a purchaser of reinsurance from the defendant retrocessionaires.[3]

In this action, plaintiff is suing NDCC on the ground that NDCC received dividends from Elkhorn/Delta Re prior to the sale to DHI that were unlawfully paid because they were based upon material misrepresentations regarding Elkhorn/Delta Re's financial position. Plaintiff also contends that NDCC failed to exercise reasonable care in the selection and supervision of Elkhorn/Delta Re employees. Plaintiff is also suing the defendant retrocessionaires that reinsured Elkhorn/Delta Re prior to 1984 on the grounds that they have failed or otherwise refused to pay reinsurance recoverables currently due Delta Re. In the event the defendant retrocessionaires are found entitled to avoid their treaty obligations to Delta Re, plaintiff asserts an

---

1. Ronnie C. Moore, Commissioner of Insurance of the Commonwealth of Kentucky, was substituted as plaintiff for his predecessor Elizabeth Wright by Stipulation and Order dated March 24, 1992.

2. In *Delta Holdings, Inc. v. National Distillers and Chemical Corp.*, 1990 WL 49709 (1990), Judge Keenan ordered the rescission of the sale of Elkhorn because of NDCC's misrepresentations and omissions regarding the true financial condition of Elkhorn, which had been insolvent for some time prior to the sale. Judge Keenan's order was reversed on appeal. *See Delta Holdings, Inc. v. National Distillers and Chemical Corp.*, 945 F.2d 1226 (2d Cir.1991).

3. A contract for reinsurance is called a "reinsurance treaty." Reinsurance is the "ceding by one company to another of all or a portion of its risks for a stipulated portion of the premium, in which the liability of the reinsurer is solely to the reinsured, which is the ceding company, and in which contract the ceding company retains all contact with the original insured, and handles all matters prior to and subsequent to loss." 13A J. Appelman & J. Appelman, Insurance Law & Practice § 7681, at 480–81 (rev. ed. 1976). Retrocessionaires, in turn, reinsure the risks assumed by the reinsurer.

alternative claim against NDCC and Delta Re's former managers on the grounds that their acts and omissions constituted a breach of various statutory, contractual or common law duties. The defendant retrocessionaires have filed a cross-claim against NDCC and Robert E. Norton[4] alleging fraud, negligent misrepresentation, and breach of fiduciary duty.

### Prior Proceedings

This action was originally filed in Kentucky state court in 1986. The defendant retrocessionaires were added to the action by the Second Amended Complaint which was served in December, 1988. In January 1989, the case was removed to the United States District Court for the Eastern District of Kentucky, Frankfort Division ("EDKY") by defendant retrocessionaires El Banco de Seguros del Estado and CO-SESP, pursuant to 28 U.S.C. § 1441(d) and § 1603 (the Foreign Sovereign Immunities Act ("FSIA")). The EDKY remanded the case back to the Kentucky state court on the grounds that the contract signed by the defendants had effectively waived their right to removal. In March 1990, the defendant retrocessionaires successfully appealed this decision to the Sixth Circuit, which reversed the district court and remanded the case to the EDKY for further proceedings. *In re Delta America Re Insurance Co.*, 900 F.2d 890 (6th Cir.1990), *cert. denied,* — U.S. —, 111 S.Ct. 233, 112 L.Ed.2d 193 (1990). A prior motion to transfer venue to the District Court for the Southern District of New York ("SDNY") was then revived, and this case was transferred pursuant to 28 U.S.C. § 1404(a) in 1991.

Prior to the transfer, the defendant retrocessionaires served a joint answer to the Second Amended Complaint in April 1989 and an amended answer in May 1989. At no time during the more than two years that this action was pending in the Kentucky state or federal courts did the liquidator ever demand that the defendant retrocessionaires post pre-answer security for judgment.

### Retrocessionaires' Motion to be Relieved from Pre–Answer Security

Section 1213(c)(1) provides that:

Before any unauthorized foreign or alien insurer files any pleading in any proceeding against it, it shall either:

(A) deposit with the clerk of the court in which the proceeding is pending, cash or securities or file with such clerk a bond with good and sufficient sureties, to be approved by the court, in an amount to be fixed by the court sufficient to secure payment of any final judgment which may be rendered in the proceeding, but order dispensing with such deposit or bond if the superintendent certifies to it that such insurer maintains within this state funds or securities in trust or otherwise sufficient and available to satisfy any final judgment which may be entered in the proceeding, or

(B) procure a license to do an insurance business in this state.

N.Y.Ins.Law § 1213(c)(1), McKinney's (1985 and Supp.1992).

In an Opinion and Order dated July 20, 1990, in *Morgan v. American Risk Management, Inc.*, 89 Civ. 2999 (JSM), 1990 WL 106837 ("the *ARM* order"), I ruled that § 1213(c)(1) required the defendant retrocessionaires in that case to post pre-answer security, rejecting the argument that retrocessionaires are not subject to the provisions of § 1213(c)(1). I also found that the Liquidator is entitled to the protections of New York Ins. Law § 1213 and has standing to demand compliance with the pre-answer security provisions of § 1213(c)(1).

In this action, the moving defendant retrocessionaires attempt to distinguish themselves from the defendant retrocessionaires in *ARM* with respect to the applicability of § 1213(c)(1). The defendant retrocessionaires claim that § 1213(c)(1) is not applicable for a number of reasons, some already discussed in the prior order, and some unique to the moving defendant retrocessionaires.

---

**4.** Mr. Norton was president of Elkhorn.

Among the claims unique to the moving defendant retrocessionaires in this motion are the following:

(1) the claim that because this action, unlike *ARM*, was originally brought in Kentucky state court, Kentucky state law should be applied, and that under Kentucky law, the moving defendant retrocessionaires would not be required to post pre-answer security;

(2) the claim that even if New York law applies, § 1213(c)(1) may not be applied to them because service was not effected pursuant to N.Y.Ins.Law § 1213(b);

(3) the claim that plaintiff has waived his right to seek compliance with § 1213(c)(1) because plaintiff failed to seek security *before* defendant retrocessionaires answered the complaint (in Kentucky), whereas the plain language of § 1213(c)(1) requires an unauthorized foreign or alien insurer to post security *prior* to filing any pleadings; and

(4) the claim by four defendant retrocessionaires [5] that they are not required to post pre-answer security because such a requirement would violate § 1609 of the FSIA, which prohibits pre-judgment attachment or similar security measures.

The remaining claims of the moving defendant retrocessionaires all stem from the general claim that § 1213(c)(1) is not applicable to retrocessionaires or that plaintiff does not have standing to invoke the protections of § 1213(c)(1). These issues, however, were discussed in the *ARM* order, and the moving defendant retrocessionaires have failed to demonstrate that they are uniquely positioned as to these claims. Therefore, as to those issues, I find the *ARM* order dispositive and will analyze only those unique claims set forth above.

### 1. *Choice of Law*

In the *ARM* order, I found that notwithstanding plaintiff's contacts with Ken-

tucky, the defendant retrocessionaires were bound by New York Insurance Law § 1213(c)(1). In the present case the plaintiff is the same; the defendant retrocessionaires argue, however, that since this action was originally brought in Kentucky state court, Kentucky law applies and that Kentucky law remains applicable despite the change of venue to the Southern District of New York under 28 U.S.C. § 1404(a).

When a federal court sits in a diversity action, it is essentially another court of the state in which the action was brought and should apply the laws of that state, *Erie R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); *Guaranty Trust Co. of New York v. York*, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945). When a diversity case is subsequently transferred to another federal district under § 1404(a) upon request of the defendants, "the transferee district court must be obligated to apply the state law that would have been applied if there had been no change of venue. A change of venue under § 1404(a) generally should be, with respect to state law, but a change of courtrooms." *Van Dusen v. Barrack*, 376 U.S. 612, 639, 84 S.Ct. 805, 820, 11 L.Ed.2d 945 (1964). As to issues of which state's choice of law doctrine applies following such a transfer, the Supreme Court has recently stated that, "the choice of law rules should not change following a transfer initiated by defendant." *Ferens v. John Deere Co.*, 494 U.S. 516, 525, 110 S.Ct. 1274, 1280, 108 L.Ed.2d 443 (1990). Therefore, in the present case this court must look to Kentucky's choice of law doctrine in deciding whether Kentucky or New York law applies to this issue.

Kentucky conflict of law doctrine is essentially that of "significant relationship." In *Breeding v. Massachusetts Indem. & Life Ins. Co.*, 633 S.W.2d 717 (Ky. 1982), the Kentucky Supreme Court stated, "[j]ustice, fairness and the best practical

---

**5.** These defendant retrocessionaires are (1) Banco de Seguros del Estados; (2) Instituto De Resseguros Do Brasil; (3) Chung Kuo Insurance Company; and (4) Grupo de Empresas Segura-

doras Brasileiras ("GESB"), which contends that one of the members of its pool, COSESP, qualifies as an agency or instrumentality of a foreign state.

result may be best achieved by giving controlling effect to the law of the jurisdiction which, because of its relationship or contact with the occurrence or the parties, has the greatest concern with the specific issue raised * * *." *Id.* at 719.

I find that New York has greater concern with the issue of pre-answer security than Kentucky. The reinsurance treaties in issue were entered into in New York, and at the time the contracts were entered into, Delta Re was authorized to, and conducted its business primarily in New York. Section 1213(c)(1) is intended to protect New York residents who contract for insurance in New York with unauthorized foreign or alien insurers from having to pursue such insurers in distant forums. Section 1213's requirement of pre-answer security is one method of protecting an insured.

Moreover, as a general rule, the local law of the forum governs rules of pleading and the proceedings in court ("procedural rules"), Restatement (Second) Conflicts of Law §§ 127, 131 (1971 and Supp.1986). Since New York Ins.Law § 1213(c)(1) sets conditions regarding the filing of "any pleading", the pre-answer security requirement is a matter of pre-trial practice and procedure that should be governed by the local law of forum, *i.e.,* N.Y. law.

### 2. *Service of Process*

■ Defendant retrocessionaires contend that they were not served according to N.Y.Ins.Law § 1213(b)(1)(D), and that the pre-answer security requirement of § 1213(c)(1) may therefore not be applied to them in this action.

Section 1213(b)(1)(D) provides in substance that the transaction of business by an unauthorized foreign or alien insurer is equivalent to and constitutes the insurer's appointment of the New York Superintendent of Insurance as its attorney, and that lawful process in any proceeding instituted by or on behalf of an insured or beneficiary arising out of such contract of insurance may be served upon the superintendent. N.Y.Ins.Law § 1213(b)(1)(D). Section 1213(b)(1)(D) further provides that transaction of business by an unauthorized foreign

or alien insurer constitutes its agreement that service on the superintendent is of the same legal force and validity as personal service of process in this state upon the insurer. *Id.*

Defendant retrocessionaires argue that § 1213(b)(1)(D) requires service on the New York Superintendent of Insurance. Section 1213(b)(5), however, provides that "[n]othing contained in this section shall limit or abridge the right to serve any process, notice or demand upon any insurer in any other manner permitted by law," and this court has held that § 1213(b)(1)(D) provides an alternative, and not an exclusive method of service for unauthorized insurers in New York. *See T.P.K. Constr. Corp. v. Southern American Ins. Co.,* 739 F.Supp. 213 (S.D.N.Y.1990) (service pursuant to New York Long Arm Statute did not render § 1213(c)(1) inapplicable).

In this case, the defendant retrocessionaires were served in accordance with Kentucky law by effecting service on the Kentucky Secretary of State, who in the retrocession treaty had been implicitly named as the retrocessionaires' agent for service of process. Thereafter, the Kentucky Secretary of State notified the retrocessionaires by forwarding the summons and complaint to the law firm of Mendes & Mount, which had been designated in the treaty to receive such notice on behalf of the retrocessionaires. Based upon § 1213(b)(5) and *T.P.K. Constr. Corp.,* I find that the concededly lawful service under Kentucky law is sufficient to permit application of § 1213(c)(1) to defendant retrocessionaires in this action.

### 3. *Waiver*

■ Defendant retrocessionaires argue initially that plaintiff has waived his right to seek pre-answer security because he failed to seek it at an earlier stage in this case. However, defendant retrocessionaires also acknowledge that under Kentucky law pre-answer security was not available to plaintiff when the case was filed. I agree with plaintiff that he cannot be found to have waived a right not available to him. Moreover, the language of § 1213(c)(1) does not require a timely de-

mand of pre-answer security; the language only sets a trigger for security (that being before a defendant undertakes to defend the action). Plaintiff also contends that because § 1213 is intended to protect the public, it cannot be waived. The preamble to § 1213 states that in enacting the law, New York, "exercises its power to protect its residents." § 1213(a) N.Y.Ins.Law. *See also Dean Constr. Co. Inc. v. Agricultural Ins. Co.,* 42 Misc.2d 834, 249 N.Y.S.2d 247, 248 (N.Y.Sup.Ct.), *aff'd,* 22 A.D.2d 82, 254 N.Y.S.2d 196 (N.Y.App.Div. 1964) (pre-answer security provision of predecessor insurance law was enacted to effectuate "the public policy of this State").

Plaintiff further argues that as a public official he is immune from the assertion of waiver. Plaintiff claims, as the statutory liquidator, that he has brought this action on behalf of the creditors and policy holders of Delta. In *Town of Hempstead v. Goldblatt,* 19 Misc.2d 176, 189 N.Y.S.2d 577 (N.Y.Sup.Ct.), *aff'd,* 9 A.D.2d 941, 196 N.Y.S.2d 573 (1959), *appeal denied,* 10 A.D.2d 711, 199 N.Y.S.2d 439 (1960), the court found that, "[a]ny prior action or lack of action on the part of public officials may not be used as a bar to the bringing of an action when the action is in a representative capacity on behalf of the public." *Id.* 189 N.Y.S.2d at 588.

Based upon the plain language of § 1213(c)(1), as well as plaintiff's arguments set forth above, I find that the plaintiff has not waived his right to demand that the defendant retrocessionaires post pre-answer security as required by § 1213(c)(1).

### 4. *Foreign Sovereign Immunities Act*

Defendants Banco de Seguros del Estados ("Seguros"), Grupo de Empresas Seguradoras Brasileiras ("GESB"), Instituto De Resseguros Do Brasil ("IRB") and Chung Kuo Insurance Company ("Chung Kuo")

contend that they are foreign states and are immune from imposition of the § 1213(c)(1) pre-answer security requirement under § 1609 of the FSIA.[6]

The FSIA was enacted in 1976 to provide access to the federal courts for the resolution of ordinary legal disputes involving a foreign sovereign. *Boxer v. Gottlieb,* 652 F.Supp. 1056 (S.D.N.Y.1987). Prior to the FSIA, foreign states enjoyed absolute immunity from jurisdiction and from process in American courts. *See* Fensterwald, *Sovereign Immunity and Soviet State Trading,* 63 Harv.L.Rev. 614, 615 (1950).

> Section 1603 of the FSIA provides that:
> (a) A "foreign state" ... includes a political subdivision of a foreign state or an agency or instrumentality of a foreign state as defined in subsection (b).
> (b) An "agency or instrumentality of a foreign state" means any entity—
>> (1) which is a separate legal person, corporate or otherwise, and
>> (2) which is an organ of a foreign state or political subdivision thereof, or a majority of whose shares or other ownership interest is owned by a foreign state or political subdivision thereof, and
>> (3) which is neither a citizen of a State of the United States as defined in section 1332(c) and (d) of this title, nor created under the laws of any third country.

28 U.S.C. § 1603. Under the FSIA, "states are not immune from the jurisdiction of foreign courts" with respect to their commercial activities, and "their commercial property may be levied upon for the satisfaction of judgments rendered against them in connection with their commercial activities." 28 U.S.C. § 1602. However, § 1609 of the FSIA provides that:

> Subject to existing international agreements to which the United States is a

---

**6.** Plaintiff does not contest the foreign state status of Seguros, GESB and IRB. However, plaintiff does contest the status of Chung Kuo as a foreign state because "[n]o affidavit of a Chung Kuo officer or director has been filed in support of that claim and the two outdated exhibits that Chung Kuo annexed to the reply memo provide only fragmentary support for it."

April 8, 1992 Letter to the court from Anderson Costigan, attorneys for plaintiff. I agree that Chung Kuo has not submitted sufficient evidence to establish its status as a foreign state under the FSIA and accordingly condition the grant of its motion on the submission of an appropriate affidavit. *See infra,* pp. 536–37.

party at the time of enactment of this Act the property in the United States of *a foreign state shall be immune from attachment arrest and execution except as provided in sections 1610 and 1611 of this chapter.*

28 U.S.C. § 1609 (emphasis added). Section 1610(d) provides that the property of a foreign state, used for commercial activity in the United States, is not immune from attachment prior to the entry of judgment in any action brought in a court of the United States if:

(1) *the foreign state has explicitly waived its immunity from attachment prior to judgment,* notwithstanding any withdrawal of the waiver the foreign state may purport to effect except in accordance with the terms of the waiver, *AND*

(2) *the purpose of the attachment is to secure satisfaction of a judgment that has been or may ultimately be entered against the foreign state, and not to obtain jurisdiction.*

28 U.S.C. § 1610(d) (emphasis added).[7]

These defendant retrocessionaires contend that N.Y.Ins.Law § 1213(c)(1) is the functional equivalent of an "attachment prior to judgment" and that they have not "explicitly waived [their] immunity from attachment prior to judgment," as required under the FSIA. 28 U.S.C. § 1610(d). They therefore contend that the FSIA prohibits the court from compelling them to post such security. This argument is supported by Judge Duffy's decision in *AGF Reinsurance Corp. of the United States v. Banco De Seguros Del Estado,* 91 Civ. 6433 (KTD), holding that a foreign sovereign defendant cannot be compelled to post security under § 1213(c)(1) of the New York Insurance Law. (A copy of Judge Duffy's memorandum endorsement of defendant's motion to be relieved from posting pre-answer security is annexed to the March 27, 1992 letter to the court from Wilson, Elser, Moskowitz, Edelman & Dicker, counsel for various retrocessionaires.)

Plaintiff, however, contends that the McCarran–Ferguson Act, which declares the business of insurance and every person engaged therein to be subject to the laws of the states, precludes federal regulation of the business of insurance. 15 U.S.C. §§ 1011, 1012(b). Therefore, plaintiff contends that the McCarran–Ferguson Act preempts the FSIA and that the defendant retrocessionaires must be compelled to post pre-answer security pursuant to § 1213(c)(1).

Plaintiff also argues that even if the FSIA is applicable, pre-answer security is not the same as an "attachment prior to entry of judgment," and even if it is, the defendant retrocessionaires have waived their rights to immunity under the Service of Suit Clause in their reinsurance treaties.

### A. The McCarran–Ferguson Act.

Plaintiff's argument that the preemptive effect of the McCarran–Ferguson Act precludes the application of the FSIA in this case is unpersuasive. Although plaintiff notes that in enacting § 1213 of the New York Insurance Law, the Legislature specifically affirmed that it was exercising "power and privilege available to the state by virtue of 15 U.S.C. § 1011 [the McCarran–Ferguson Act]," N.Y.Ins.Law § 1213(a), plaintiff ignores the fact that the Supreme Court has held that the preemptive effect of the McCarran–Ferguson Act only "exempts the insurance industry from Commerce Clause restrictions." *Metropolitan Life Ins. Co. v. W.G. Ward, Jr.,* 470 U.S. 869, 880, 105 S.Ct. 1676, 1683, 84 L.Ed.2d 751 (1985). In that case, the Supreme Court struck down an Alabama statute, which taxed foreign corporations at a higher rate than its own residents, as violative of the Equal Protection Clause, noting the that McCarran–Ferguson Act "does not purport to limit in any way the applicability of the Equal Protection Clause." *Id.* Similarly, in *State Bd. of Ins. v. Todd Shipyards Corp.,* 370 U.S. 451, 82 S.Ct. 1380, 8 L.Ed.2d 620 (1962), the Supreme Court struck down a Texas statute imposing a tax on premiums paid to an out-of-state

---

**7.** Section 1611 of the FSIA has no application to this case.

insurer as violative of the due process clause of the Fourteenth Amendment.

The Second Circuit noted the limitations of McCarran–Ferguson Act preemption of other federal legislation in *Spirt v. Teachers Ins. and Annuity Ass'n*, 691 F.2d 1054 (2d Cir.1982), *modified* and *aff'd*, 735 F.2d 23 (2d Cir.1984). In that case, the Court held that the McCarran–Ferguson Act does not preclude application of Title VII of the Civil Rights Act of 1964 to the business of insurance, stating:

> The McCarran Act was enacted in 1945 in direct reaction to the Supreme Court's decision in *United States v. South–Eastern Underwriters Assoc.*, 322 U.S. 533, 64 S.Ct. 1162, 88 L.Ed. 1440 (1944), one year before. * * * Thus, Congress' purpose in adopting the McCarran Act was only to ensure that the states would be permitted to fulfill their traditional role in relation to insurance regulation. As stated by the Supreme Court, the intent was, first, "to assure that the states are free to regulate insurance companies without fear of Commerce Clause attack," * * * and second, to give insurance companies only a limited exemption from the antitrust laws. * * * According to the legislative history, it was "not the intention of Congress to clothe the States with any power to regulate or tax the business of insurance beyond that which they had been held to possess prior to the decision * * * in the *South–Eastern Underwriters Association* case."

691 F.2d at 1064 (citations omitted). This court has also held that the preemptive effect of McCarran–Ferguson Act should not be

> applied indiscriminately to subsequent federal legislation, the overriding purpose of which is not the regulation of commerce but the protection of other important federal interests, *solely because that legislation fails specifically to state that it is applicable in circumstances where insurance interests are implicated.*

*Women in City Government United v. City of New York*, 515 F.Supp. 295, 303 (S.D.N.Y.1981) (emphasis added).

Furthermore, the Supreme Court has held that a conflicting state law must yield if it "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Hines v. Davidowitz*, 312 U.S. 52, 67, 61 S.Ct. 399, 404, 85 L.Ed. 581 (1941). The Supreme Court has held that "rules of international law should not be left to divergent and perhaps parochial state interpretations," *Banco Nationale de Cuba v. Sabbatino*, 376 U.S. 398, 425, 84 S.Ct. 923, 938, 11 L.Ed.2d 804 (1964), and has consistently held that suits against foreign states have the potential for harming the foreign relations of the United States. *See Zschernig v. Miller*, 389 U.S. 429, 88 S.Ct. 664, 19 L.Ed.2d 683 (1968); *Banco Nationale de Cuba*, 376 U.S. at 398, 84 S.Ct. at 923.

In enacting the FSIA, "Congress expressly exercised its power to regulate foreign commerce, along with other specified Art. I powers." *Verlinden B.V. v. Central Bank of Nigeria*, 461 U.S. 480, 496, 103 S.Ct. 1962, 1973, 76 L.Ed.2d 81 (1983). Moreover, the Supreme Court has emphasized the "primacy of federal concerns" in U.S. foreign policy relations:

> By reason of its authority over foreign commerce and foreign relations, Congress has the undisputed power to decide as a matter of federal law, whether and under what circumstances foreign nations should be amenable to sit in the United States. Actions against foreign sovereigns in our courts raise sensitive issues concerning the foreign relations of the United States, and the primacy of federal concerns is evident.

*Id.* at 493, 103 S.Ct. at 1971 (citations omitted).

█ In view of the paramount importance of the U.S. foreign policy concerns embodied in the FSIA, I find that the preemptive effect of the McCarran–Ferguson Act does not extend to the FSIA. Accordingly, the property of any foreign state in this action may be attached prior to judgment *only if:* (1) it has *explicitly*

waived its immunity under the FSIA from attachment prior to judgment; and (2) the purpose of the attachment is to secure the satisfaction of a judgment that has been or may be entered against it.[8]   28 U.S.C. § 1610(d)(1) & (2).

### B.   Attachment Prior to Judgment.

■ Plaintiff argues that "pre-answer security" is not analogous to "attachment prior to judgment," and therefore, that the FSIA does not preclude the application of § 1213(c)(1) of the N.Y.Ins.Law.   Plaintiff argues that § 1213(c)(1) is simply a condition precedent to the right to defend a particular type of suit and not a provisional remedy.

This argument ignores the fact that several courts have treated pre-answer security as the equivalent of an attachment. *See, e.g., Arnold Chait, Ltd. v. La Metropolitana, Compania Nacional de Seguros, S.A.,* 26 Misc.2d 751, 207 N.Y.S.2d 22 (N.Y.Sup.Ct.1960) (where the court refused to require the posting of pre-answer security under the predecessor statute because the plaintiff had already obtained adequate security by attachment); *see also T.P.K. Constr. Corp. v. Southern American Ins. Co.,* 739 F.Supp. 213, 216 (S.D.N.Y.1990) (requiring pre-answer security because, unlike *Chait,* plaintiff had obtained no other attachment or levy).

Moreover, the Second Circuit has held that the FSIA bans *not only* an attachment prior to judgment, *but also* "any other means to effect the same result." *S & S Machinery Co. v. Masinexportimport,* 706 F.2d 411, 418 (2d Cir.), *cert. denied,* 464 U.S. 850, 104 S.Ct. 161, 78 L.Ed.2d 147 (1983) (holding that the dissolution of an injunction was proper because "[t]he FSIA would become meaningless if courts could

eviscerate its protections merely by denominating their restraints as injunctions against the negotiation or use of property rather than as attachments of that property"); *see also Caribbean Trading and Fidelity Corp. v. Nigerian Nat'l Petroleum Corp.,* 948 F.2d 111, 116 (2d Cir.1991), *cert. denied,* — U.S. ——, 112 S.Ct. 1941, 118 L.Ed.2d 547 (1992) (Mahoney J. concurring) (noting that the majority opinion was correctly premised upon the assumption that the "posting of security was an 'attachment' of a foreign state's property within the meaning of [the FSIA]"), *quoting Willamette Transport, Inc. v. CIA Anonima Venezolana de Navegacion,* 491 F.Supp. 442, 443–44 (E.D.La.1980).

Applying these cases, I find that the pre-answer security requirement has the effect of an "attachment prior to judgment."   Accordingly, the property of any foreign state in this action may be attached only if that foreign state has explicitly waived its FSIA immunity from attachment prior to judgment.   28 U.S.C. § 1610(d).

### C.   Waiver of Immunity from Attachment Prior to Judgment.

■ Plaintiff argues that even if § 1213(c)(1) is, in effect, an attachment, the defendant retrocessionaires have waived their immunity from attachment prior to judgment in the Service of Suit Clauses[9] in their reinsurance treaties.   Accordingly, plaintiff argues, attachment prior to judgment is permitted pursuant to § 1610(d) of the FSIA.   However, plaintiff's argument is flawed.

Plaintiff cites *Libra Bank Ltd. v. Banco Nacional de Costa Rica, S.A.,* 676 F.2d 47 (2d Cir.1982), to support his claim that the defendant retrocessionaires have waived

---

**8.**   Since jurisdiction is not at issue in this action, attachment prior to judgment can only serve the purpose of securing satisfaction of a judgment that has been or may be ultimately entered against defendants.   Accordingly, I will confine the following discussion to the first prong of 28 U.S.C. § 1610(d)(1), specifically "attachment prior to judgment" and "waiver".

**9.**   The Service of Suit Clause provides, in relevant part, that:

It is agreed that in the event of the failure of the reinsurers hereon to pay any amount claimed to be due hereunder the Reinsurers hereon, at the request of Elkhorn will submit to the jurisdiction of any Court of competent jurisdiction within the United States and will comply with all requirements necessary to give such Court jurisdiction and *all matters arising hereunder shall be determined in accordance with the law and practice of such Court.*

their immunity to prejudgment attachment. However, the facts in that case are distinguishable. In that case, the Court held that the defendant had clearly and explicitly waived its immunity in all legal proceedings. This holding was based on language in the promissory notes executed by the defendant, which provided, in relevant part, that:

> [t]he Borrower hereby irrevocably and unconditionally waives any right or immunity from legal proceedings including suit judgment and execution on grounds of sovereignty which it or its property may now or hereafter enjoy.

*Id.* at 49. In *Libra*, the language was virtually all-inclusive, with the defendant waiving *"any right to immunity from legal proceedings ... on the grounds of sovereignty." Id.* (emphasis added).

However, in the case at hand, there has been no such explicit, all-inclusive waiver. Although plaintiff argues that the language contained in the Service of Suit Clause is "all-encompassing and unambiguous," Plaintiff's Memo at 63, the Service of Suit Clause makes no reference, explicit or otherwise, to waiver, sovereign immunity, or prejudgment attachment. Although the defendant retrocessionaires have agreed to have "all matters arising [under the treaty] determined in accordance with the law and practice of [this] Court," I do not find any waiver, explicit or otherwise, regarding prejudgment attachment.

The Second Circuit has emphasized that any waiver under § 1610(d)(1) of the FSIA be explicit:

> The requirement that the waiver of immunity from pre-judgment attachment be *explicitly* made is underscored by both the plain language of § 1610(d) by the contrast between § 1610(d) and § 1610(a). A foreign state's immunity from attachment as an aid in the execution of judgment can be waived implicitly as well as explicitly, while the immunity from *pre-judgment attachment* can be waived only by unmistakable and plain language.

*S & S Machinery Co. v. Masinexportimport,* 706 F.2d at 416 (citations omitted).

*See also In re Delta American Re Insurance Co.,* 900 F.2d 890, 892–94 (6th Cir. 1990); *Caribbean Trading and Fidelity Corp.,* 948 F.2d at 116 (Mahoney J. concurring) (holding that Congress valued protection against prejudgment attachment so highly, that it specified that such immunity may only be "explicitly" waived). Moreover, although, the waiver need not specifically state the words "prejudgment attachment":

> a waiver of immunity must be explicit in the common sense meaning of that term: the asserted waiver must demonstrate unambiguously the foreign state's intention to waive its immunity from prejudgment attachment in this country. We do not take lightly the congressional demand for explicitness. It would be improper for a court to subvert this directive by substituting a judicially reconstituted gloss on a facially unclear document for an unequivocal waiver by the foreign state.

*S & S Machinery,* 706 F.2d at 416.

Both the Second Circuit and this court have refused to find a waiver of prejudgment attachment or its equivalent in language expressly waiving "immunities from suit or execution of judgment or other liability." *Id.; see also O'Connell Machinery Co. v. M.V. "Americana",* 734 F.2d 115 (2d Cir.1984), *cert. denied,* 469 U.S. 1086, 105 S.Ct. 591, 83 L.Ed.2d 701 (1984); *New England Merchants Nat'l Bank v. Iran Power Generation and Transmission Co.,* 502 F.Supp. 120 (S.D.N.Y.1980) (where similar language did not waive prejudgment attachment).

Accordingly, I hold that the Service of Suit Clause in the defendant retrocessionaire's reinsurance treaties does not meet the standard of explicit waiver under § 1610(d) of the FSIA.

### Conclusion

For the foregoing reasons, the defendant retrocessionaires' motion to be relieved of the requirement of posting pre-answer security pursuant to N.Y.Ins.Law § 1213(c)(1) is denied, except that as to the three retrocessionaires who have established their foreign state status within the meaning of § 1603 of the FSIA, the motion

is granted. With respect to Chung Kuo, which contends that it is a foreign state, the motion will be denied unless it makes an adequate showing within 20 days of the date of this Order that it is a foreign state within the meaning of § 1603 of the FSIA. The parties are directed to follow procedures set forth in *ARM* regarding the determination of the amount of pre-answer security to be posted.

So ordered.

### ON MOTION FOR REARGUMENT

Sept. 4, 1992.

Plaintiff's motion for reargument in connection with my August 14, 1992 Order regarding the posting of preanswer security under New York Ins.Law § 1213(c)(1) is denied for substantially the reasons set forth in the Memorandum of Law in Opposition to Plaintiff's Motion to Reargue submitted by defendant retrocessionaire Instituto de Resseguros de Brazil.

On August 14, I ordered Chung Kuo Insurance Company to establish its status as a foreign sovereign. Chung Kuo has submitted the Affidavit of Mr. J.W. Wang, Senior Vice President of Chung Kuo, which I find clearly establishes its status as a foreign sovereign. Accordingly, Chung Kuo's motion to be relieved from posting preanswer security pursuant to N.Y.Ins. Law § 1213(c)(1) is granted.

SO ORDERED.